## Altoona & Beech Creek Railroad Company v. Pittsburg, Johnstown, Ebensburg & Eastern Railroad Company, Appellants.

*Statute of limitations—Possession of personal property—Railroads.*

Where the purchaser of the property of a railroad company sold under foreclosure proceedings has had possession for eight years of a locomotive claimed as a part of the property sold, the statute of limitations will protect such possession against a person claiming that the locomotive had been merely leased to the mortgagor, and was not covered by the mortgage under which the foreclosure proceedings were instituted. In such a case equity follows the law in applying the statute.

Argued April 22, 1902. Appeal, No. 114, Jan. T., 1902, by defendants, from decree of C. P. Blair Co., Equity Docket B, No. 376, on bill in equity in case of Altoona & Beech Creek Railroad Company v. Pittsburg, Johnstown, Ebensburg & Eastern Railroad Company and the Altoona & Beech Creek

Terminal Railroad Company.   Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Bill in equity for an injunction.

BELL, P. J., filed the following opinion :

In May, 1892, the Altoona, Clearfield & Northern Railroad Company, by an instalment lease, purchased from the Baldwin Locomotive Works the locomotive which is the subject of controversy.   The price to be paid was $7,500; $3,000 was paid in cash ; notes of the company were given for the balance ; an instalment lease was given to secure said notes.   The notes not being paid, the Baldwin Company, to No. 137, January term, 1894, issued a writ of replevin for said locomotive, to which the sheriff of Blair county made return :   " December 29, 1893, by order of plaintiff's attorney, the within mentioned engine, having been replevied by me, was delivered to W. F. Forsythe, he receiving the same by direction aforesaid and as agent for plaintiff."

[The delivery to Mr. Forysthe was only formal and symbolic ; he did not in fact take charge of said locomotive ; and when he undertook to exercise acts of ownership over it he was arrested on a criminal charge and abandoned all claim of ownership.] [1]

The lease from the Baldwin company to the said railroad company was recorded in Blair county, but in a deed book, not in " the same book as mortgages are recorded," as required by the provisions of the Act of July 5, 1883, P. L. 176.

The Altoona, Clearfield & Northern Railroad Company took possession of said locomotive and used the same until 1897, when it was sold to a committee of the bondholders in a sale by virtue of a mortgage given to secure such bondholders.

Said bondholders reorganized the railroad company under the name of the Altoona & Beech Creek Railroad Company and used said locomotive as their property until they leased same, in connection with the other property of the railroad, to the Pittsburg, Johnstown, Ebensburg & Eastern Railroad Company.   Said lease was about to be abrogated on January 1, 1902, when the locomotive in question was removed from the line of the Altoona & Beech Creek Railroad, taken across a

public road and loaded on the cars of the Pittsburg Railroad, whereupon this bill was brought to restrain such removal.

In 1893 and 1894 there was protracted litigation as to the control of the Altoona, Clearfield & Northern Railroad. The F. G. Patterson faction were first in control; then what is termed the Langdon faction obtained control, S. P. Langdon being president; then, on appeal to the Supreme Court, the Langdon faction were ousted and the Patterson faction put in possession; then S. P. Langdon and F. G. Patterson were appointed receivers. The facts surrounding this litigation will be found in Langdon v. Patterson, 158 Pa. 476, and Shellenberger v. Patterson, 168 Pa. 31.

On October 3, 1893, S. P. Langdon was president of the Altoona, Clearfield & Northern Railroad Company. The minutes of said company show that on said date:

"The president reported that Messrs. Burnham, Williams & Co. (the Baldwin company) had withdrawn all legal proceedings, and the account left for an amicable adjustment at a later date."

Mr. Langdon, in addition to acting as president of the Altoona, Clearfield & Northern Railroad Company, was also president of the Pittsburg, Johnstown, Ebensburg & Eastern Railroad Company and was the president, or the active director, of the United Collieries Company.

[On December 30, 1893, Mr. Langdon, while acting still as the president of the Altoona, Clearfield & Northern Railroad Company, entered into an agreement, as president of the United Collieries Company, with Burnham, Williams & Company (the Baldwin company) whereby said Baldwin company transferred their rights in the locomotive in question to the said United Collieries Company, who were to pay the balance due on same in coal. On September 30, 1897, said United Collieries Company did pay said balance in coal. But no notice of such transfer by the Baldwin company to the United Collieries Company was ever given to the Altoona, Clearfield & Northern Railroad Company or their successors in title. At the sale on the mortgage a notice was given that S. P. Langdon claimed the said locomotive, but Mr. Langdon never attempted to assert title in pursuance of said notice. On the contrary, from the fall of 1893 on down to the inception of this

suit, or October 25, 1901, the Altoona, Clearfield & Northern Railroad Company and their successors in title, the Altoona & Beech Creek Railroad Company, claimed said locomotive and exercised ownership over the same. The first that said companies knew of the claim of the United Collieries Company was when said collieries company asked to intervene as defendants.] [2]

LEGAL DISCUSSION.

[The said United Collieries Company cannot now be heard to set up their said claim to the said locomotive for two reasons :

1.—Said claim as against the Altoona & Beech Creek Railroad Company, a " purchaser for a valuable consideration" is barred by the Act of July 5, 1883, P. L. 176. Said act provides as follows :

" That whenever any railroad equipment and rolling stock shall hereafter be sold, leased or loaned . . . . such contract shall be invalid as to . . . . any subsequent purchaser for a valuable consideration without notice, unless . . . .

" II. Such writing shall be recorded in the same book as mortgages are recorded. . . . .

" III. Each locomotive . . . . so leased, or loaned, shall have the name of the vendor, lessee or bailee plainly marked upon both sides thereof . . . ."

The evidence adduced in this case negatives the idea that the locomotive in question was marked in accordance with the provisions of said section III. Moreover, the written lease was not recorded " in the same book as mortgages are recorded," but in a deed book. Hilton's Appeal, 116 Pa. 359, is an authority for the proposition that the statutory provision in relation to chattel mortgages must be literally complied with.

In Luch's Appeal, 44 Pa. 519, it is ruled that :

" Mortgages must be recorded in the mortgage books, where they can be found by reference to the mortgage index, or the recording is insufficient."

In Collins v. Bellefonte Central R. R. Co., 171 Pa. 257, the only case wherein the Supreme Court seems to have passed on the provisions of said act of July 5, 1883, notice of the claim of Mr. Collins was given at the sale and the purchaser thereat afterwards entered into negotiations to buy out his claim.] [3]

[2. Plaintiffs acquired title to the locomotive in question by virtue of the statute of limitation.   From the fall of 1883 on down to the fall of 1901, they have been claiming said locomotive as their property, have been in the possession of same and have been exercising acts of ownership over it.   The first notice they had of any adverse claim in behalf of the United Collieries Company was after the inception of this suit.   In Williams on Personal Property, p. 509, it is said:

" If goods and chattels should have come into the possession of persons having no title to them, such persons will, in course of time, be quieted in their enjoyment by virtue of the statute of limitations.   By this statute all actions of trespass, detinue and replevin for goods or chattels must be brought within six years. . . . "

It is scarcely necessary to cite authorities to the effect that equity follows the law as to the statute of limitations.   Moreover, this seems to be the case when the said statute is peculiarly applicable for three reasons:

1. The plaintiffs or their predecessors in title, the Altoona, Clearfield & Northern Railroad Company, intended to purchase the locomotive.   The lease, or bailment agreement, was only a device to secure to the Baldwin company the purchase money.   Such bailments, while upheld by our Supreme Court, have not been particularly favored.

2. S. P. Langdon, in all the various transactions, was acting in a dual capacity, or possibly a triple capacity.   He was representing the Altoona, Clearfield & Northern Railroad Company, the Pittsburg, Johnstown, Ebensburg & Eastern Railroad Company and the United Collieries Company.

3. The plaintiffs, or the said predecessors in title, paid $3,000 on account of this locomotive.   Collins v. Bellefonte Central R. R. Co., 171 Pa. 257, is an authority to the effect that it is not inequitable to reimburse them for said outlay.   It may be that the decree in this case will be without prejudice to rights of the United Collieries Company to maintain an action at law wherein they can attempt to recover the amount they have invested in the locomotive in question.] [4]

LEGAL CONCLUSIONS.

[The injunction heretofore granted should be made perpetual.

and defendants should be restrained from removing or further interfering with said locomotive.] [5]

*Errors assigned* were (1–5) portions of opinion, quoting them.

*Thomas H. Geevy*, for appellant.—The statute of limitations does not apply: Johnston v. Humphrey, 14 S. & R. 395.

*William S. Hammond*, for appellee.

OPINION BY MR. JUSTICE FELL, May 19, 1902:

The bill filed in this case was to prevent the removal of locomotives and cars from the railroad leased by the defendants, the lease having been declared forfeited and the lessee directed to deliver possession of the road and property leased to the lessor.    The real contest was as to the ownership of a locomotive which was delivered to the Altoona, Clearfield & Northern Railroad Company, by Burnham, Williams & Company, in 1892. Before the delivery, $3,000 of the contract price was paid, and notes given for the balance.    Two months after the delivery, default having been made in the payment of one of the notes, a lease was entered into by which it was provided that when a rental equal in amount to the unpaid balance of the purchase money should have been paid in instalments, the locomotive should become the property of the railroad company.    It does not appear from the testimony whether the first agreement between the parties was for a lease, the execution of which was deferred, or whether this was a new arrangement to secure Burnham, Williams & Company, after the railroad company had failed to make the first payment.    If there was a sale of the locomotive, it became subject to the lien of a mortgage given by the railroad company to secure bonds it had issued, and the title to it passed from the purchaser at the receivers' sale to the plaintiff.    If there was a lease only, and it was properly recorded, the title was in one of the defendants, who purchased whatever interest Burnham, Williams & Company had in the locomotive.

It is, however, unnecessary to determine what right was acquired or how it was affected by the failure to record the lease

in the manner provided by the Act of July 5, 1883, P. L. 176. The plaintiff, under an undisputed claim of ownership, was in possession of the locomotive for eight years before the assertion of title by the party now claiming it. The statute of limitation was therefore a bar to any proceeding at law, and it should be applied by analogy with the same effect in a court of equity.

The decree is affirmed at the cost of the appellant.